[CHAMBERSBURG, OCTOBER, 1828.]

ANDERSON and another *against* NESBIT and others.

IN ERROR.

Where one conveys land which has been surveyed and returned, and describes it as land held on a warrant of a certain date, and in a certain name, all the land embraced by the survey passes, though the purchaser did not at the time of the sale know, that a certain part was included, and afterwards, frequently spoke of it as the land of the seller; provided the interest of third persons be not affected by such declarations.

And this is more emphatically the case, where the seller is an executor, with power to sell, and has, through a mistake, in supposing it to be vacant land, cut off part of the testator's estate, and appropriated it to his own use.

But it *seems*, that if the purchaser has got a title to such part, without having paid for it, he will be a trustee for those beneficially interested.

WRIT of error to the Court of Common Pleas of *Perry* county, in an ejectment brought by *William Anderson* and *Samuel M'Cord*, against *Allen Nesbit, Samuel Nesbit*, and *Fisher Nesbit.*

(Anderson and another *v.* Nesbit and others.)

*Alexander* and *Carothers,* for the plaintiffs in error.
*Miller, contra.*

The opinion of the court was delivered by

Huston, J.—This is an ejectment, in which the plaintiffs here
were plaintiffs below. *Alexander Murray* died before 1793, leav-
ing four daughters, one of whom afterwards married the plaintiff,
*William Anderson,* one married *M'Crea,* one married *Allen Nes-
bit,* Sen., and one married *William Fisher.* He made a will, and
appointed his widow, *William Fisher,* and *Allen Nesbit* executors.
He died possessed of a valuable tract of land; and further, on the
18th of *June,* 1774, a warrant issued to *William Irwin* for fifty
acres, on which a survey of fifty-six acres and one hundred and
forty-seven perches was made by *S. Lyon,* deputy surveyor, on the
23d of *June,* 1787. It was admitted one half of this land belonged
to *Alexander Murray.* On the 4th of *October,* 1793, *Francis
Irwin,* the only son and heir of *William Irwin,* made a deed to
*William Fisher,* one of *Murray's* executors, for the use of the
legatees of the said *Murray,* for one *undivided half* of the said
tract, to be taken off the upper end of the said tract, adjoining the
said *Murray's* land, containing in all fifty acres, more or less, sur-
veyed on warrant in *June,* 1774.

On the 4th of *April,* 1794, *Francis Irwin* sold his own half to
*William M'Cord.* After reciting, that he had conveyed one-half to
*William Fisher,* he conveys the other undivided half of the before
*described tract,* in consideration, &c. *William M'Cord's* repre-
sentatives, by legal conveyance, sold this half to *William Ander-
son,* on the 15th of *January,* 1823, describing it as one equal half
of the said warant and right for fifty acres, held on warrant, dated,
&c. as above.

*Alexander Murray,* by his will, devised to his daughters, *Mar-
garet, Mary, Isabella,* and *Jane,* all his estate, real and personal,
to be equally divided among them; to be at their disposal among
their children, as they shall think them deserving. After some
small legacies, he adds, " also all the plantation I now live on, to be
sold after my wife's decease, and divided as before." On the 6th of
*April,* 1811, *Allen Nesbit* and wife conveyed to *Allen Nesbit,* Jr.
and *John Nesbit,* reciting *Murray's* will, and Mrs. *Nesbit's* title
to one-fourth of the two tracts of land, and describing the larger by
courses and distances, and the other as twenty-five acres, being half
of a fifty acre warrant, granted to *William Irwin;* and sold Mrs.
*Nesbit's* fourth part of both tracts, subject to the widow's dower.
*William Fisher* was then dead. Before this, in 1802, *Allen Nes-
bit* and *William M'Cord,* had met on the land, and made a divi-
sion by parol; and a Mr. *Morrison* had, as was supposed, run round
the whole tract, and marked a division line. Although the survey,
made by Mr. *Lyon* was returned, yet it would seem, this was not
known to the owners, for *Morrison's* survey left out a long narrow

(Anderson and another *v.* Nesbit and others.)

strip adjoining *Murray's* other land, and containing about fifteen acres, and in other respects differed from the survey, which was well marked on the ground, and from the return in the office. Immediately after this division, *Allen Nesbit* bought a *Wyoming* credit, and took a warrant on it, surveyed on this land so left out at the division, together with a few acres adjoining, which perhaps were really vacant; and there was no proof in the cause, whether this was fraud or mistake in *Nesbit.* But, from that time until 1824, perhaps all those interested, remained ignorant that it was included in the return of survey, as well as the marked lines on the warrant to *William Irwin.*

On the 14th of *June,* 1814, (the widow being dead,) *Allen Nesbit,* as surviving executor, sold the whole estate at public sale to *William Anderson,* (including the fourth part sold before to *Allen* and *John Nesbit;* but *Anderson* immediately conveyed the same fourth to them.) In the deed, the mansion tract was described by courses and distances; and also, the one-half of the above-described tract, surveyed in pursuance of a warrant granted to *William Irwin,* &c., and covenanted, that " the said *Nesbit* has not heretofore done, or committed any act, matter, or thing, wittingly, or wilfully suffered to be done any thing whereby the premises hereby *granted, or any part thereof* is, are, or shall, or may be impeached, charged, or incumbered, in title, charge, or estate, or otherwise."

*Allen* and *John Nesbit* conveyed their fourth part, described as in the deed of *Allen Nesbit* and wife, to *Samuel M'Cord,* the other plaintiff. The plaintiffs showed, and it was admitted, *William Anderson* was the owner of *Jane M'Crea's* share. Mrs. *Fisher's* share appeared to be outstanding then, but it was sold with the rest to *Anderson* by *Allen Nesbit,* surviving executor, and thus the title to the whole was vested in the plaintiffs. On this same 14th of *June,* 1815, *Anderson* executed a release in full and general terms to *Allen Nesbit,* for the shares of his wife and of Mrs. *M'Crea.*

In 1823, *Anderson* applied for a patent for the land, and then saw the draft, and discovered that it embraced the fifteen acres for which this ejectment is brought, and which it is admitted he did not know were included in the survey on the warrant to *William Irwin* at the time of his purchase.

The defendants, who are the children of *Allen Nesbit,* claimed these fifteen acres as their own, and showed the warrant, survey, and return of their father in 1803, as good title. This the court very properly decided was no title; because, at that time, a warrant, survey, and return, not founded on actual settlement, was void; and because, an executor could not take land surveyed and returned by his testator, and which, as executor, he was bound to give to the devisees.

But it was further contended, that *Anderson* did not know these fifteen acres belonged to the testator; did not think he had purchased it, and after his purchase, frequently called it *Nesbit's* land,

and really thought it was his, from 1815 till 1823; and in this part of the case the court were mistaken in the view they took of it. If a man sells land which is surveyed and returned, and. he describes it as so much land held on a warrant of a certain date, and in a certain name, it is as certain and precise a description, as if the deed had recited the courses and distances of the survey. The description then, in the several deeds, and among others, in the deed of *Allen Nesbit* to *Anderson,* of this land, *as one-half of a tract of land, surveyed* in pursuance of a warrant to *William Irwin,* dated the 18th of *June,* 1774, containing fifty acres, more or less, was precisely equivalent to a conveyance reciting the courses and distances in the return of survey. Considering it in this point of view then, it is conveyed to *Anderson* and *M'Cord,* by a description which cannot be mistaken; and in such a case, and where it is under a misapprehension, said repeatedly, that the land was not his, belonged to *Nesbit,* &c., these parol declarations do not destroy the title. If, in consequence of these declarations, *Nesbit* had sold it to an innocent purchaser, some difficulty might have arisen. This in a common sale. But it is out of the question, that an executor should cut off for himself a part of the estate he is selling, give a deed embracing that part, but deceive the buyer as to the lines, and then keep the part so cut off. Admit he was mistaken, he cannot mistake himself into the ownership of property intrusted to him for others.

But it was said, this land was devised to. executors to be sold, and this broke the descent: That neither the heirs nor their alienee had a right to land, but to the price of land; and that, therefore, the plaintiffs cannot recover. Admit this, (for myself I only admit it with exceptions not a few,) it does not apply here; for first, as to *M'Cord's* part, he holds it under two conveyances, one from *Nesbit* and wife, as the wife's fourth of her father's estate; and an executor, who has power to sell as executor, a share as heir, and sells as heir, shall never be permitted to say, his own deed passes no title. But, if he could say this, yet he sold the whole as executor, and both *Anderson* and *M'Cord* hold under his deed as executor; it is in their deed, and thus they can recover. *Anderson* has a conveyance through *William M'Cord* for *Irwin's* half, and he can recover that half under this title.

But further; although land is devised to an executor to sell, if he refuses to sell, if he denies the trust, and says, the land is his own, as we have no Court of Chancery to compel him to convey, the only mode heretofore in use, is to bring ejectment, and recover.the possession; and that is precisely the case as to the part now in question.

It has, however, been argued, that *Irwin* and *S. M'Cord,* not having understood, at the time of their several purchases, that they were buying the land in question, it is unjust to the heirs, that they should get it without paying for it. This comes with a bad grace

(Anderson and another *v.* Nesbit and others.)

from those who meant to defraud, or perhaps mistake the heirs out of it. But *Anderson* and *M'Cord* represent the heirs, except Mrs. *Fisher's* one-eighth; and are entitled to it, whether land or money. If money, *Anderson* has a right to his wife's share as husband, surviving her, or as guardian of his child, (and it appears he is guardian,) or as trustee of his child, for he has declared in writing, that he holds one-fourth for her; and as assignee of Mrs. *M'Crea,* of her share; and *M'Cord* has the share, be it land or money, of the mother of the defendants. I admit, that if this part were of value, and these men had got the title to it, without paying for it, they would be trustees for those beneficially interested, and must, in equity, account for it. But as this case stands, they would only have to account to themselves, except for Mrs. *Fisher's* share. Still having the legal title, they can support an ejectment against a wrong-doer, against any but the *cestui que trust.* The defendants are not the *cestui que trusts.* *Allen Nesbit* parted with the trust, by his deed to *Anderson.* He held this back as a spoiler; his children hold it so, and cannot hold in law or in equity, in despite of either the plaintiffs or Mrs. *Fisher.* Possibly, however, there is so little value in the property in dispute, that the expense of recovering it, will be double the value; and, as the *cestui que trust* would be called on to pay this expense, there will be no claim by Mrs. *Fisher* or *Jane M'Crea,* about it.

There were several other points made in this cause, which, from the view taken of it here, need not be noticed.

Judgment reversed, and a *venire facias de novo* awarded.