NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0176n.06

No. 21-3468

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PAUL CLINE; JEANINE CLINE,

    Plaintiffs-Appellants,

v.

DART TRANSIT COMPANY; SUSAN PRIEST RICHLAK, Administrator of the Estate of Richard M. Thompson, Jr., deceased,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Apr 19, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, CLAY, and GIBBONS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** While driving a semitruck westbound on U.S. Highway 30, Richard Thompson suffered a fatal heart attack that caused him to swerve into eastbound traffic and collide with Paul Cline. Following the accident, Cline and his wife, Jeanine Cline, sued Thompson's estate and the carrier that contracted Thompson to drive the truck, Dart Transit Company.[1] We held in a prior opinion that the estate had been fraudulently joined and that the district court had abused its discretion by granting summary judgment to Dart without providing the Clines with a sufficient opportunity to conduct discovery. Now we confront a different issue: whether the estate and Dart are entitled to summary judgment on their state-law affirmative defense. Given our prior holding that the estate was fraudulently joined, we conclude that the district court lacked power to grant summary judgment to the estate. And because a

---

[1]We refer to Paul Cline individually as Cline, and Paul and Jeanine Cline collectively as the Clines.

reasonable factfinder could find that Dart has not proved its affirmative defense, we again reverse the district court's grant of summary judgment to Dart and remand for further proceedings.

## I. BACKGROUND

### A. Factual Background

Thompson was an independent contractor who drove a semitruck for Dart. R. 5 (Answer ¶ 14) (Page ID #54). On August 11, 2016, Thompson reported to Dart that he had suffered a heart attack six days earlier. R. 61-1 (Luckow Dep. Tr. at 40:8–41:19) (Page ID #1984–85); R. 62-1 (Notice of Claim Rep. at 1) (Page ID #2244). Dart suspended Thompson from driving until he was cleared by a physician. *See* R. 61-1 (Luckow Dep. Tr. at 42:18–23) (Page ID #1986).

A few months later, on October 4, 2016, Thompson was examined by Dr. Nathaniel Franley, a medical doctor authorized by the United States Department of Transportation ("DOT") to issue medical certifications—known as "DOT cards"—that certain commercial drivers, like Thompson, must have to operate their vehicles. R. 111-1 (Franley Exam. Rep. at 1–4) (Page ID #3235–38); *see* 49 C.F.R. § 391.41(a)(1)(i) (providing that "[a] person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so"). Thompson reported his August heart attack to Dr. Franley and disclosed that he was taking several medications, including aspirin, paroxetine, lisinopril, atenolol, and atorvastatin. R. 111-1 (Franley Exam. Rep. at 1) (Page ID #3235). Based on his examination, Dr. Franley certified that Thompson was medically fit to drive and issued a DOT card that authorized Thompson to drive his semitruck for one year. R. 111-1 (DOT Card at 1) (Page ID #3232).

The medical examiner who performed Thompson's autopsy, Dr. Renée Thompson, would later testify at her deposition that it was more likely than not that Thompson suffered an additional

heart attack following his return to driving in October 2016 but before his fatal heart attack in December of that year.[2] R. 114-1 (Robinson Dep. Tr. at 104:9–21) (Page ID #3324). Dr. Robinson concluded that the changes in Thompson's heart were significant enough that it was "likely that he had symptoms." R. 111-2 (Robinson Dep. Tr. at 98:11–12) (Page ID #3245). These symptoms, according to Dr. Robinson, could have included chest pain, pain in the jaw or neck, vomiting, diarrhea, or loss of consciousness. *Id.* at 97:22–98:2 (Page ID #3244–45). But Dr. Robinson could not say what symptoms Thompson actually experienced or whether he knew he was having a heart attack, as opposed to something more benign, such as acid reflux. *Id.* at 97:7–11, 22–24; 98:6–23 (Page ID #3244–45).

There is no uncertainty about what happened to Thompson next. On December 21, 2016, Thompson was driving a semitruck westbound on U.S. Highway 30 when he suffered a heart attack, causing him to lose control of his truck and strike a tree, cross the median into incoming eastbound traffic, and crash into Cline. R. 1-1 (Compl. ¶ 6) (Page ID #12); R. 51-1 (Traffic Crash Rep. at 1) (Page ID #490). Thompson died from his heart attack, and Cline was injured in the crash. R. 1-1 (Compl. at 2) (Page ID #11); R. 51-2 (Coroner Rep. at 8) (Page ID #544).

---

[2]The parties dispute Dr. Robinson's precise findings. Dart and the estate assert that Dr. Robinson "opined that Mr. Thompson had prior myocardial infarctions, and she opined that he had symptoms, however she did not opine that Mr. Thompson had a *symptomatic myocardial infarction* in the time period between his medical certification and his fatal heart attack." Appellees Br. at 17. They base this assertion on Dr. Robinson's deposition, where she was asked: "You don't know if Mr. Thompson had a symptomatic myocardial infarction between the time that he was medically certified to drive a truck and his fatal heart attack in December of 2016; correct?" R. 111-2 (Robinson Dep. Tr. at 101:11–15) (Page ID #3248). Dr. Robinson answered: "Correct." *Id.* at 101:16 (Page ID #3248). But Dr. Robinson was then asked: "[J]ust to make everything clear, is it your opinion to a reasonable degree of medical certainty, that [it] is more likely than not, that Mr. Thompson had subsequent myocardial infarctions, or heart attacks, between October when he returned to driving and December, when he had his fatal heart attack?" R. 114-1 (Robinson Dep. Tr. at 104:9–16) (Page ID #3324). Dr. Robinson answered: "Yes. He's got changes in his heart that are indicative of being ten days old. I mean, up till even ten days prior to his death, he had changes consistent with an infarction." *Id.* at 104:17–21 (Page ID #3324). Because the Clines are the non-moving party, we must view the evidence "in the light most favorable to" them, "drawing all reasonable inferences in [their] favor" when resolving Dart's and the estate's motion for summary judgment. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## B. Procedural Background

The Clines filed a lawsuit against the estate and Dart in the Wayne County, Ohio, Court of Common Pleas. R. 1-1 (Compl. at 1) (Page ID #10). They alleged that Thompson was negligent in crossing the median and crashing into Cline and that Dart was both negligent itself and vicariously and strictly liable for Thompson's negligence. *Id.* ¶¶ 6–26 (Page ID #12–15). The estate and Dart removed the case to federal court and asserted that the district court had diversity jurisdiction over the matter. R. 1 (Notice of Removal at 1) (Page ID #1). But that raised an issue: the federal diversity-jurisdiction statute, 28 U.S.C. § 1332(a)(1), requires complete diversity, and both the Clines and the estate are domiciled in Ohio, *see* R. 1 (Notice of Removal ¶ 3) (Page ID #2). Seizing on that jurisdictional issue, the Clines moved to remand the case to state court for lack of subject-matter jurisdiction. R. 6 (Mot. to Remand at 2) (Page ID #60).

The estate and Dart opposed remand. They argued that the district court could ignore the estate's citizenship for diversity-jurisdiction purposes because the estate had been fraudulently joined, citing the fact that Ohio imposes a six-month limitations period on tort claims against a decedent's estate and that the Clines had not filed their lawsuit within six months of Thompson's death. R. 1 (Notice of Removal ¶ 8) (Page ID #4). The district court agreed and denied the Clines' motion to remand. R. 21 (05/25/2018 Dist. Ct. Order at 1) (Page ID #143); *see* R. 27 (05/24/2018 Hr'g Tr. at 11–16) (Page ID #174–79). Later, the district court granted summary judgment to Dart based on its finding that Dart was excused from liability by Ohio's sudden-medical-emergency affirmative defense. *Cline v. Dart Transit Co.*, No. 5:18CV00258, 2019 WL 1282109, at *1, *6 (N.D. Ohio Mar. 20, 2019) (*Cline I*). The Clines appealed, challenging the district court's order denying their motion to remand and its order granting Dart's motion for summary judgment.

We awarded the Clines a partial victory. *See Cline v. Dart Transit Co.*, 804 F. App'x 307 (6th Cir. 2020) (*Cline II*). We rejected the Clines' jurisdictional challenge, holding that there was complete diversity between the parties because the estate had been fraudulently joined. *Id.* at 312. But we agreed that the district court had failed to provide the Clines with a sufficient opportunity to conduct discovery before granting summary judgment to Dart. *Id.* at 312–17. We therefore vacated the district court's judgment and remanded the case for further proceedings. *Id.*

On remand, the estate moved to dismiss the Clines' claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 87 (Defs. Mot. to Dismiss at 1–2) (Page ID #3025–26). The Clines opposed the estate's motion and sought to file an amended complaint that purported to cure the deficiencies that led us to hold that the estate had been fraudulently joined. R. 89 (Mot. to Amend Compl. at 1–4) (Page ID #3035–38); R. 90 (Pl. Opp. to Mot. to Dismiss at 1) (Page ID #3048). Although the district court indicated that it was inclined to grant the motion to dismiss the estate, the court did not rule on the motion. *See* R. 121 (06/29/2020 Hr'g Tr. at 26–27) (Page ID #3384–85). Instead, the district court permitted the parties to exchange additional discovery. At the close of discovery, the estate and Dart again moved for summary judgment on their sudden-medical-emergency affirmative defense. R. 111 (Defs. Mot. for SJ at 1–2) (Page ID #3200–01).

The district court granted the estate and Dart's motion for summary judgment and denied the estate's separate motion to dismiss as moot. *Cline v. Dart Transit Co.*, No. 5:18CV0258, 2021 WL 1697913, at *1 (N.D. Ohio Apr. 29, 2021) (*Cline III*). The Clines now appeal the district court's summary-judgment ruling. R. 118 (Notice of Appeal at 1) (Page ID #3356).

## II. ANALYSIS

### A. The Estate

We begin with the district court's award of summary judgment to the estate because it raises a threshold jurisdictional issue.[3] In our prior opinion, we held that the Clines' and the estate's shared domicile did not divest the district court of diversity jurisdiction because the estate had been fraudulently joined. *Cline II*, 804 F. App'x at 312. On remand, the district court granted summary judgment to the estate. *Cline III*, 2021 WL 1697913, at *1. We hold, however, that the district court lacked subject-matter jurisdiction to make that merits determination.

"A district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). If the non-diverse defendant was not fraudulently joined, then the district court lacks subject-matter jurisdiction and must remand the case to state court. *Saginaw Hous. Comm'n*, 576 F.3d at 624. By contrast, if the non-diverse defendant was fraudulently joined, the court may exercise jurisdiction over the case, but the court must dismiss that defendant from the action and lacks the power to resolve the merits of the claims against it. *See Pollington v. G4S Secure Sols.*

---

[3]Although neither party raised the issue on appeal, we have an obligation to address sua sponte a lack of subject-matter jurisdiction. *See Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992).

*(USA) Inc.*, 712 F. App'x 566, 566 (6th Cir. 2018); *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406–07 (6th Cir. 2007); *Terry v. Jackson*, 19 F. App'x 377, 379–80 (6th Cir. 2001).

Given this precedent, the district court exceeded its authority by granting summary judgment to the estate. We held that the district court had diversity jurisdiction over the case only because the estate had been fraudulently joined and therefore should be disregarded. *Cline II*, 804 F. App'x at 310–12. After we remanded the case, the district court should have dismissed the estate from the case and exercised jurisdiction over only the Clines' claims against Dart.[4] *See Pollington*, 712 F. App'x at 566. By declining to dismiss the estate and instead granting it summary judgment, the district court both ignored our prior holding that the estate was not a proper defendant and made a merits determination that required it to exercise diversity jurisdiction over a controversy between non-diverse parties. Accordingly, we vacate the district court's grant of summary judgment to the estate. On remand, the district court is directed to dismiss the estate without prejudice. *See* Fed. R. Civ. P. 21; *see also Hiller v. HSBC Fin. Corp.*, 589 F. App'x 320, 321 (6th Cir. 2015) (per curiam) (affirming dismissal of fraudulently-joined defendants under Rule 21); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206–07 (2d Cir. 2001) (same); *Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653, 654–55 (7th Cir. 1992) (same).

---

[4]The estate moved to dismiss the claims against it for failure to state a claim. R. 87 (Def. Mot. to Dismiss at 1–2) (Page ID #3025–26). The estate was right to seek its dismissal, but it should not have done so under Rule 12(b)(6). Dismissal for failure to state a claim is a merits determination, and a court must have subject-matter jurisdiction to make a merits ruling. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). Because there was no diversity jurisdiction over the controversy between the Clines and the estate, the district court could not have dismissed the Clines' claims against the estate under Rule 12(b)(6). *Id.* Under the circumstances, where we have already held that the estate was fraudulently joined, we believe that Federal Rule of Civil Procedure 21 is the appropriate procedural vehicle for dismissing the estate from the case.

**B. Dart**

The district court's grant of summary judgment to Dart raises a different issue: whether Dart has met its burden of establishing that it is entitled to summary judgment based on its sudden-medical-emergency affirmative defense. Given the substantial showing that Dart must make to prevail on its affirmative defense at this stage of the case, and considering the minimal evidentiary record that Dart has produced, we hold that Dart is not entitled to summary judgment.

"[F]ederal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Applying those principles here, we use the federal standard governing the availability of summary judgment, *id.*, and we follow "the decisions of the state's highest court" when determining whether Dart has established its state-law affirmative defense, *Berrylane Trading, Inc. v. Transp. Ins. Co.*, 754 F. App'x 370, 374 (6th Cir. 2018) (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)); *see also Trombley v. Seterus Inc.*, 614 F. App'x 829, 832–33 (6th Cir. 2015) (consulting Michigan caselaw to determine whether defendant had proven its state-law affirmative defense).

We review de novo a district court's grant of summary judgment. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805 (6th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, a defendant seeks summary judgment "on an affirmative defense on which it will bear the ultimate burden of proof at trial," the defendant must satisfy a demanding standard. *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014). Under these circumstances, summary judgment is proper "only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the

contrary." *Id.* (internal quotations omitted) (quoting *Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006)); *see Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017) (explaining that affirmative defenses may be resolved at summary judgment, but that "the defendant has the burden to show that it is entitled to the defense").

Dart seeks summary judgment based on Ohio's sudden-medical-emergency affirmative defense. Under Ohio law, "[w]here the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control." *Roman v. Est. of Gobbo*, 791 N.E.2d 422, 432 (Ohio 2003) (quoting *Lehman v. Haynam*, 133 N.E.2d 97, 98 (syllabus ¶ 2) (Ohio 1956)). A defendant invoking the sudden-medical-emergency affirmative defense bears the burden of establishing two elements: (1) that the driver "was suddenly stricken by a period of unconsciousness, which rendered it impossible for him to control the car he was driving" and (2) that the driver "had no reason to anticipate or foresee" the period of unconsciousness. *Id.* at 432–33 (quoting *Lehman*, 133 N.E.2d at 98 ¶ 3).

Here, the parties agree that Thompson suffered a fatal heart attack that made it impossible for him to control his semitruck when he struck Cline. Thus, the dispute is limited to whether Dart has established "so clearly" that neither it nor Thompson had reason to anticipate or foresee his loss of consciousness "that no rational jury could have found to the contrary."[5] *Snyder*, 580 F. App'x at 461 (internal quotation omitted) (quoting *Beck-Wilson*, 441 F.3d at 365).

---

[5]The Clines assert that if Thompson did have reason to foresee his heart attack, then he was negligent and Dart is strictly and vicariously liable for his negligence. *See* R. 1-1 (Compl. ¶¶ 13–17) (Page ID #13–14). Dart has not challenged the Clines' theory of liability.

Dart argues that it is entitled to summary judgment based primarily on Dr. Franley's examination of Thompson on October 4, 2016. As discussed above, the purpose of that examination was to determine whether Thompson had recovered from his August heart attack and could resume driving for Dart. Dr. Franley, who was authorized by the DOT to make that determination, was apprised of Thompson's August heart attack, examined Thompson, and concluded that it was safe for Thompson to drive his semitruck for at least the next year. *See* R. 111-1 (DOT Card at 1) (Page ID #3232). Dart contends that neither it nor Thompson would have reason to foresee that Thompson would suffer a fatal heart attack two-and-a-half months later.

We agree that Dr. Franley's examination is sufficient to establish that *Dart* had no reason to foresee Thompson's loss of consciousness. Dart knew that Thompson had reported his August heart attack to Dr. Franley and that Dr. Franley had cleared Thompson to resume driving, and there is no evidence that Dart learned of Thompson's later heart troubles. Ohio courts have awarded summary judgment to defendants based on similar evidence. *See Boyd v. Helman*, 2011-Ohio-642, ¶ 4, 2011 WL 486845, at *1 (Ohio Ct. App. Feb. 11, 2011) (driver's long-term physician "attested to the fact that prior to [the crash], [the driver] had neither a history of heart problems nor any symptoms to indicate a problem"); *Griffith v. Hoile*, No. 5-97-23, 1998 WL 12682, at *3 (Ohio Ct. App. Jan. 12, 1998) (doctor "had no reason to suspect that [the driver] would have another heart attack and had not restricted his activities in any way"); *Fitas v. Est. of Baldridge*, 657 N.E.2d 323, 324–25 (Ohio Ct. App. 1995) (doctor testified that driver's "activities had not been restricted due to any medical condition" and that his loss of consciousness "was sudden and unexpected, and could not have been reasonably anticipated from a medical point of view").

Consistent with these decisions, Dart was entitled to rely on Dr. Franley's opinion that it was safe for Thompson to drive and had no reason to foresee Thompson's loss of consciousness.

Dr. Franley's examination is not, however, dispositive of whether *Thompson* had reason to foresee his loss of consciousness. In each decision cited above, there was no evidence that the driver experienced either new or additional symptoms or a significant medical event following a doctor's evaluation. For instance, in *Boyd*, the driver's "coronary artery disease . . . was asymptomatic until" it caused sudden loss of consciousness. 2011 WL 486845, at *1. Similarly, in *Griffith*, the driver "had a prior history of heart related problems and had undergone surgery[,]" but the driver's wife testified that the driver "had experienced no symptoms to indicate a problem with his heart since his last surgery" four years earlier. 1998 WL 12682, at *3. And in *Fitas*, the driver had coronary artery bypass surgery four years earlier but had since returned to work, and there was no evidence that he experienced heart trauma or heart-related symptoms prior to his loss of consciousness. 657 N.E.2d at 324–25. Thus, in each case, neither the doctor nor the driver had reason to think that subsequent events had undermined the doctor's prior opinion.

Here, by contrast, Dr. Robinson testified that Thompson likely experienced a symptomatic heart attack after he was seen by Dr. Franley but before he suffered his fatal December heart attack. R. 114-1 (Robinson Dep. Tr. at 104:9–21) (Page ID #3324). Based on Dr. Robinson's testimony, a reasonable factfinder could find that it was an open question whether Thompson would have continued to rely on Dr. Franley's opinion that it was safe for him to drive despite his new symptoms. *Cf.* 49 C.F.R. § 391.45(g) (mandating a new medical examination whenever a driver's "ability to perform his or her normal duties has been impaired by a physical or mental injury or disease"). Further, the factfinder could also find that it was possible that Thompson experienced

11

serious enough symptoms—up to even "pass[ing] out," R. 111-2 (Robinson Dep. Tr. at 98:2) (Page ID #3245)—that he had reason to foresee his subsequent loss of consciousness. *See Dunlap v. W.L. Logan Trucking Co.*, 829 N.E.2d 356, 370 (Ohio Ct. App. 2005) (reversing judgment for defendant where driver did not know that he had a particular medical condition but was aware that he was experiencing symptoms "that could interfere with his safe operation of a truck").

Following Dr. Robinson's testimony, Dart was obligated to come forward with evidence that would compel a reasonable factfinder to resolve these material issues in its favor. Dart could have, for example, introduced testimony from someone close to Thompson observing that Thompson had not exhibited signs of heart distress between October and December 2016, or that Thompson had said that he was experiencing acid reflux or some other minor condition or symptom that would not have suggested that he was at risk of losing consciousness. *Cf. Boyd*, 2011 WL 486845, at *1 (testimony from primary care physician); *Griffith*, 1998 WL 12682, at *3 (testimony from wife and family physician); *Fitas*, 657 N.E.2d at 324–25 (testimony from wife and family physician). Absent that sort of additional evidence, nothing in the record would compel the conclusion that it was more likely than not that Thompson's symptoms were non-existent or insignificant, or that he would not have recognized his symptoms as indicating a risk of losing consciousness.

Dart has not introduced evidence addressing Dr. Robinson's testimony. Instead, Dart continues to rely on Dr. Franley's examination and merely identifies several unresolved factual issues, such as whether Thompson's symptoms were severe enough that he would have recognized them as symptoms of a heart attack. *See* Appellees Br. at 19–20. Those factual uncertainties make it possible that Thompson did not foresee his loss of consciousness, but they do not compel that

conclusion. Accordingly, Dart has not compiled a "record show[ing] that [it] established the [sudden-medical-emergency affirmative] defense so clearly that no rational jury could have found to the contrary." *Snyder*, 580 F. App'x at 461 (quoting *Beck-Wilson*, 441 F.3d at 365).

The district court viewed Dart's burden differently. It found that Dr. Robinson's testimony did not create a genuine dispute of material fact because she could not say with precision what symptoms Thompson experienced or whether he knew he was experiencing symptoms of a heart attack. *Cline III*, 2021 WL 1697913, at *7. According to the district court, Dr. Robinson's inability to opine on these matters meant that a jury "would be forced to engage in pure speculation regarding what types of symptoms Mr. Thompson suffered, the severity of those symptoms, and whether Mr. Thompson understood them to be related to a heart attack." *Id.*

We agree that there are unresolved factual issues in this case, but we disagree that those factual uncertainties entitle Dart to summary judgment. If the Ohio Supreme Court had placed the burden on the plaintiff to prove that the driver could foresee his loss of consciousness, we would agree that the Clines have not made that showing. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (where the plaintiff bears the burden of proof, the plaintiff "cannot rely on conjecture or conclusory accusations"). But the state court did the opposite: it placed the burden on the *defendant* to prove that the loss of consciousness was *not* foreseeable precisely because it recognized how difficult it would be for the plaintiff to make the inverse showing. *Lehman*, 133 N.E.2d at 98 ¶ 3, 101; *see Roman*, 791 N.E.2d at 432 (reaffirming "the balance put in place by *Lehman*" of "plac[ing] the burden of proving the defense on the defendant, including proving that the unconsciousness was not foreseeable"). The burden was therefore on Dart to demonstrate that Thompson's loss of consciousness was not foreseeable despite Dr. Robinson's testimony, not on

the Clines to prove that it was foreseeable because of her testimony.  By failing to produce more than a minimal evidentiary record, Dart has not met its burden at this stage of the case.

### III.  CONCLUSION

We vacate the district court's grant of summary judgment to the estate, and reverse its grant of summary judgment to Dart.  We remand for further proceedings consistent with this opinion.